Mark F. Anderson (SBN 44787)
Anderson, Ogilvie & Brewer LLP
1736 Stockton Street, Ground Floor
San Francisco, CA 94133
Ph: (415) 651-1951
Fax: (415) 500-8300
mark@aoblawyers.com

Attorneys for Plaintiff Leslie D. Tauanuu

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Leslie D. Tauanuu,<br><br>       Plaintiff,<br><br>       v.<br><br>Loancare, LLC, a Virginia corporation;<br>Trans Union, LLC;<br>Experian Information Solutions, Inc.; and<br>Equifax Information Services, LLC,<br><br>       Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>COMPLAINT<br><br>VIOLATIONS OF THE FAIR<br>CREDIT REPORTING ACT & THE<br>CALIFORNIA CIVIL CODE<br><br>Jury Trial Demanded |

**Preliminary Statement**

1.    This is an action for damages brought by Leslie D. Tauanuu against defendants

Loancare, LLC; Trans Union LLC; Experian Information Solutions, Inc.; and Equifax Information

Services, LLC for violation of the Fair Credit Reporting Act ("FCRA") and the Consumer Credit

Reporting Agencies Act, Civil Code Section 1785.25(a).

**The Parties**

2.    Plaintiff Leslie D. Tauanuu is an individual who resides in Contra Costa County,

California.

3.      Defendant Loancare, LLC is a Virginia corporation which has its principal place of business in Virginia Beach, VA, and is engaged in the business of servicing mortgages.

4.      Defendant Trans Union, LLC ("TU") is a limited liability company that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

5.      Defendant Experian Information Solutions, Inc. is an Ohio corporation that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

6.      Defendant Equifax Information Services, LLC, is a Georgia limited liability company that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

**Jurisdiction & Venue**

7.      The court has federal question jurisdiction over the FCRA claims pursuant to 15 USC §1681p and supplemental jurisdiction over the state law claims pursuant to 15 USC § 1367.

8.      The defendants do business in this district.

**Description of the Case**

9.      Plaintiff has owned a single-family residence in Antioch, California, since October 2013. Plaintiff financed the purchase with a mortgage from Sterns Lending, Inc. The promissory note October 14, 2013, called for payments of $1,542.40 per month. Sterns Lending established an escrow account for insurance and property tax on the property bringing plaintiff's initial monthly payment to $2,170.81.

10.      In or about April 2014, Sterns Lending, Inc. transferred the mortgage to defendant Loancare, LLC. Plaintiff began making her mortgage payments to defendant Loancare, LLC on May 5, 2014.

11.   After experiencing some financial difficulties, in March 2015 plaintiff applied to Loancare, LLC for a loan modification. Loancare, LLC acknowledged receipt of her application for a loan modification in a letter dated March 20, 2015. In the letter, Loancare, LLC promised a review of her application within five business days.

12.   In a telephone conversation in late March 2015, a Loancare representative offered plaintiff a forbearance agreement under which her mortgage payments would be reduced to $1,090 per month for six months starting May 1, 2015. The representative told plaintiff she could accept the offer by paying her first reduced payment of $1,090 by April 30, 2015. The representative said it was OK to skip the March 2015 payment because she was approved for the forbearance plan. Plaintiff accepted the forbearance plan offer by paying the initial $1,090 payment through her bank's online payment system. Loancare posted her check on April 29, 2015. In the telephone conversation, the representative did not tell plaintiff that Loancare would report to the credit reporting agencies that she had been late in making her mortgage payments.

13.   A few weeks after the telephone conversation described above had taken place, plaintiff received a letter dated April 16, 2015, from Loancare that reiterated that plaintiff had been approved for a Forbearance Plan, under which her mortgage payments were reduced to $1,090 per month for six months with the first payment due May 1, 2015, and subsequent payments due on the 1st of the month.

14.   Prior to entering into the forbearance agreement, plaintiff had made each mortgage payment in full and on time from the inception of the mortgage loan up to the date she accepted Loancare's Forbearance Plan.  Plaintiff made each of the six Forbearance Plan loan payments of $1,090 on a timely basis with the last such payment posted on October 5, 2015.

15.   On October 23, 2015, Loancare sent plaintiff a letter in which it offered plaintiff a loan modification beginning with a trial period plan. Under the plan, plaintiff was required to make

three Trial Period Plan payments of $2,120.11 with the first payment due by December 1, 2015, the second by January 1, 2016, and the third by February 1, 2016. Plaintiff made each of these payments by the due dates.

16.     Upon completion of the trial period plan, plaintiff paid each of the mortgage payments on a timely basis to date. In sum, plaintiff has never been delinquent in paying the mortgage payments as agreed.

17.     Even though plaintiff has never been delinquent, Loancare reported to the defendant credit reporting agencies (CRAs) that plaintiff was 30 days delinquent in April 2015, 60 days delinquent in May and June 2015, 90 days delinquent in July 2015, and 120 days in each of the months from August 2015 through July 2016. The defendant CRAs reported plaintiff had been delinquent in those months. Each of these reports was inaccurate, incomplete, and materially misleading to plaintiff's creditors and potential creditors.

18.     In its reports to the credit reporting agencies, Loancare failed to consider that plaintiff had entered into the Forbearance Plan and Trial Period Plan under which plaintiff could skip payments during March 2015 and October 2015 and to make reduced payments under the forbearance agreement. Loancare's accounting system was faulty in not taking these agreements into account therefore, the system indicated plaintiff was delinquent in the months described above when in fact plaintiff was not delinquent.

19.     On March 6, 2017, plaintiff applied for a car loan only to be denied because the CRAs were reporting plaintiff was late on a mortgage.

20.     On March 7, 2017, plaintiff sent a dispute letter to defendant Loancare in which she pointed out she had made each payment as agreed on a timely basis. On March 8, 2017, a Loancare representative named David, employee ID 5016, called plaintiff to say Loancare would delete the late payment reports in June and July 2016, but otherwise would not change its credit reporting.

//

21.    On March 7, 2017, plaintiff sent online disputes to the defendant CRAs in which she stated the reports she had been delinquent on paying the Loancare mortgage were inaccurate because in fact she had never been delinquent.

22.    Upon receipt of the disputes letters, each of the defendant CRAs contacted Loancare, LLC by electronically sending it an Automatic Consumer Dispute Verification (ACDV). The ACDV notified Loancare, LLC that plaintiff was disputing its report that she was late in making payments on the account.

23.    Upon receipt of each ACDV, Loancare, LLC was required to conduct a reasonable investigation of the dispute and to then report back to the CRA the results of its investigation. The CRA in turn reported the results to plaintiff.

24.    Loancare, LLC responded to the ACDVs from the CRAs that its reports that plaintiff had been delinquent from April 2014 through May 2016 were accurate. Loancare, LLC told the CRAs to delete the reports that plaintiff had been delinquent in June and July 2016.

25.    On April 1, 2017, Trans Union sent plaintiff the results of its investigation, which was that its report on the Loancare, LLC was unchanged, except that it added the remark that the loan was "modified/federal government plan."

26.    On March 29, 2017, Experian sent plaintiff the results of its investigation, which was that its report on the Loancare, LLC was unchanged, except that Experian deleted the late payment reports in June and July 2016.

27.    On April 1, 2017, Equifax sent plaintiff the results of its investigation, which were that is report on the Loancare, LLC account was unchanged, except that Equifax deleted the late payment reports in June and July 2016.

28.    The defendants' credit reports were inaccurate, misleading, and incomplete.

29.     The defendants' credit reporting was inaccurate and misleading because the reports would reasonably lead a creditor to believe plaintiff had not paid the payments due under the mortgage loan on a timely basis when in fact plaintiff had made all required payments on a timely basis.

30.     Defendants willfully, intentionally, recklessly and negligently repeatedly failed to follow procedures that would correct the inaccurate, misleading and incomplete credit information.

31.     Plaintiff has suffered actual damages in the form of (a) lost credit opportunities, b) harm to credit reputation and credit score, and (c) emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiff will continue to suffer the same for an indefinite time in the future, all to plaintiff's great detriment and loss.

32.     Defendant Loancare, LLC is a subscriber to the CRAs. As such, at least once a month, Loancare, LLC electronically transmits its customers' account information to CRAs. Each such transmission includes changes, additions and deletions of customers' account information.

33.     When Loancare, LLC transmitted the loan account information, it knew that the CRAs would sell the credit information to anyone who had a permissible purpose to obtain the credit information and who was willing to pay the CRAs fees. Such persons include banks, finance companies and others that are in the business of loaning money to consumers.

34.     Potential credit grantors that were considering extending credit to plaintiff sought and obtained plaintiff's credit reports from one or more of the CRAs.

35.     During the two years preceding the filing of the complaint in this action, various credit grantors obtained plaintiff's credit reports, which included Loancare's reports that plaintiff was late in making her mortgage payments.

36.     Each time a CRA sold a copy of plaintiff's credit reports to a potential credit grantor, plaintiff was damaged. Each such sale was a separate publication of Loancare's inaccurate and

misleading reports plaintiff had been late in making her mortgage payments.

37.   Credit scores are used by credit grantors to decide whether to extend credit. The credit scores are primarily based on the contents of the consumer's credit reports published by the CRAs. Plaintiff's credit scores were adversely affected by Loancare's inaccurate credit reporting

**First Claim: Violations of the Fair Credit Reporting Act—Against Trans Union LLC, Experian and Equifax**

38.   Plaintiff incorporates by reference ¶¶ 1 through 37.

39.   The Fair Credit Reporting Act provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consume notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or delete the item from the file within 30 days of receiving the consumer's dispute notice. 15 USC § 1681i(a)(1) (A).

40.   In conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

41.   Within the two years preceding the filing of this complaint, plaintiff notified the defendant CRAs of inaccuracies contained in its reports and asked them to correct the inaccuracies.

42.   Defendants failed to conduct a reasonable reinvestigation of the inaccuracies that plaintiff disputed.

43.   Defendants failed to review and consider all relevant information submitted by plaintiff.

44.   Defendants failed to employ and follow reasonable procedures to assure maximum possible accuracy of plaintiff's credit reports, information and file in violation of 15 USC § 1681e(b).

45.     Because of the above-described violations of § 1681i and § 1681e(b), plaintiff has sustained damages.

46.     Defendant's violations of the FCRA were willful and therefore plaintiff is therefore entitled to also seek statutory and punitive damages.

**Second Claim: Violations of the Fair Credit Reporting Act—Against Loancare, LLC.**

47.     Plaintiff incorporates by reference ¶¶ 1-37.

48.     The FCRA requires a furnisher such as Loancare, LLC, after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by a furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

49.     Within the last two years, the defendant provided inaccurate and misleading information to the credit reporting agencies.

50.     The defendant violated sections 1681n and 1681o by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(b):

(a)     willfully and negligently failing to investigate of the inaccurate information that plaintiff disputed;

(b)     willfully and negligently failed to review all relevant information concerning plaintiffs' accounts;

(c)     willfully and negligently failing to report the results of investigations to the CRAs;

(d)     willfully and negligently failing to report the inaccurate status of the inaccurate information to the CRAs.

(e)     willfully and negligently failing to properly participate, investigate and comply with

the reinvestigations that were conducted by the CRAs concerning the inaccurate information disputed by plaintiff;

(f)     willfully and negligently failing to provide the CRAs with the information and evidence plaintiff submitted to defendants that proved that the information concerning plaintiff's credit reports were inaccurate and misleading;

(g)     willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning plaintiff's account to the CRAs and

(h)     willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-s(b).

51.     Because of the above-described violations of § 1681s-2(b), plaintiff has been damaged.

**Third Claim: Violations of the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.25 (a) – Against Loancare, LLC**

52.      Plaintiff incorporates by reference ¶¶ 1-51.

53.      California Civil Code § 1785.25 (a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

54.      Loancare, LLC negligently and willfully furnished information to the credit reporting agencies it knew or should have known was inaccurate, misleading, and incomplete.

55.      Loancare, LLC failed to conduct a reasonable investigation as to whether its credit reporting was accurate, misleading or incomplete.

56.      Based on these violations of Civil Code § 1785.25 (a), plaintiff is entitled to the remedies afforded by Civil Code § 1785.31, including actual damages, attorney's fees, pain and suffering, injunctive relief, and punitive damages in an amount not less than $100 nor more than $5,000, for each violation as the Court deems proper.

1    57.    Each transmission to a CRA by Loancare, LLC of a report that plaintiff had been over

2   30 days late in making her mortgage payments was a violation of Civil Code § 1785.25(a).

3   **PRAYER**

4        WHEREFORE, plaintiff prays for judgment as follows:

5        1.    Actual, statutory and punitive damages;

6        2.    Injunctive relief;

7        3.    Costs and attorney's fees; and

8        4.    Such other relief as the Court may deem proper.

9
10   Dated: May 12, 2017.

11                ANDERSON, OGILVIE & BREWER LLP

12                By /s/ *Mark F. Anderson*
                     Mark F. Anderson
13                   Attorney for Plaintiff

14                DEMAND FOR JURY TRIAL

15        Plaintiff demands a trial by jury on all issues.

16
17   Dated: May 12, 2017.

18                ANDERSON, OGILVIE & BREWER LLP

19
20                By /s/ *Mark F. Anderson*
                     Mark F. Anderson

21
22
23
24
25
26
27
28